**SO ORDERED.**

**SIGNED this 12 day of March, 2010.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILSON DIVISION**

| IN RE: | ) | Case Number |
|---|---|---|
|  | ) |  |
| **Shady Leonard Daniels, III and** | ) | **09-02547-8-JRL** |
| **Melinda Kelley Hughes,** | ) |  |
|  | ) |  |
| **William Figured,** | ) | **09-06490-8-JRL** |
|  | ) |  |
| **Thomas Beaman,** | ) | **09-09547-8-JRL** |
|  | ) |  |
| **Richard Eugene Haywood,** | ) | **09-07792-8-JRL** |
|  | ) |  |
| **Don Barry Bosco and** | ) | **09-02715-8-JRL** |
| **Nancy Bosco.** | ) |  |
|  | ) |  |
| Debtors. | ) | **Chapter 13** |

**ORDER REGARDING BANKRUPTCY ADMINISTRATOR'S MOTION FOR SHOW CAUSE FOR FAILURE TO COMPLY WITH DISCLOSURE REQUIREMENTS OF RULE 2016, AND MOTION FOR RULE 2017 EXAMINATION OF DEBTORS' TRANSACTIONS WITH ATTORNEY**

This matter is before the court upon the Bankruptcy Administrator's Motion For Show Cause For Failure To Comply With Disclosure Requirements Of Rule 2016, and Motion For Rule 2017 Examination Of Debtors' Transactions With Attorney [hereinafter "Motion"]. The court conducted a hearing on February 24, 2010 to consider the Motion and responses thereto.

**BACKGROUND**

On December 30, 2009, the Bankruptcy Administrator filed her Motion with the court. The Motion requested that William T. Batchelor, attorney for debtors, appear in court and show cause why he should not be required to disgorge all pre-petition and post-petition fees not previously applied for or disclosed to the court and Bankruptcy Administrator, as well as be sanctioned for failure to disclose such fees. The Motion is tied to four bankruptcy cases in which Mr. Batchelor's actions and fee practices do not conform to the Bankruptcy Code or Rules.

The first case involves William Jerome Figured. Mr. Figured filed his bankruptcy to stay a foreclosure proceeding on commercial property he owns in Carolina Beach, North Carolina. Mr. Figured originally discussed filing a bankruptcy petition with Mr. Batchelor, but decided to acquire the services of Charlene Wilson. On April 22, 2009, Mr. Figured's first bankruptcy was filed. (Case No. 09-03251-8-JRL). Ms. Wilson withdrew as counsel after filing the petition. In an effort to salvage his bankruptcy and stop the foreclosure[1], Mr. Figured hired Mr. Batchelor. On July 31, 2009, with his first bankruptcy case still pending, Mr. Figured paid a $75 "consultation fee" and $2,000 to Mr. Batchelor. Mr. Figured was informed that a second bankruptcy case would be filed on August 3, 2009, to upset the foreclosure. However, "remaining" attorney fees were required before filing.

On the morning of August 3, 2009, Mr. Figured paid Mr. Batchelor an additional $3,000, bringing the total pre-petition fees to $5,000. Mr. Figured made several telephone calls on August 3rd to check the status of the petition. On or around 4:20 p.m., Mr. Batchelor's office called Mr. Figured and instructed him to come to the office for filing. The foreclosure was final at 5:00 pm. At 5:01 p.m., Mr. Batchelor filed Mr. Figured's second bankruptcy petition. A few months after the filing of his second

---

[1] A Motion For Relief From Stay was filed in Mr. Figured's first bankruptcy case. The Motion For Relief was in reference to the commercial property at Carolina Beach. As no response was filed by Mr. Figured or Ms. Wilson, who had yet to be allowed to withdraw as attorney by the Court, an Order lifting the Stay was entered. The secured creditor re-commenced the foreclosure proceedings. On July 24, 2009, the secured creditor was the high bidder at the sale. The 10-day upset bid period expired on August 3, 2009 at 5:00 p.m.

petition, the court dismissed Mr. Figured's first bankruptcy case for failure to make chapter 13 plan payments.  On August 31, 2009, the court entered an order determining that the automatic stay was inapplicable in Mr. Figured's second bankruptcy proceeding because it was filed one minute after the deadline for upsetting foreclosure.  On September 11, 2009, the second bankruptcy was dismissed for failure to make plan payments.   Mr. Batchelor did not file a disclosure of compensation along with Mr. Figured's second bankruptcy petition.  He did, however, file a disclosure of compensation on January 7, 2010, showing the receipt of $5,000.

The second case involves Shady Leonard Daniels, III and Melinda Kelley Hughes.  Mr. Daniels and Mrs. Hughes filed bankruptcy due to a downturn in their logging business.  They sought the representation of Mr. Batchelor in March 2009.  The first payment to Mr. Batchelor was in the amount of $75 for a "consultation fee."  The second payment was $3000 for the filing of an accelerated petition.  Mr. Daniels' and Mrs. Hughes' case was filed on March 27, 2009.  At the time of filing, Mr. Daniels and Mrs. Hughes believed that the monies paid covered all expenses of the bankruptcy.  Mr. Batchelor filed a disclosure of compensation along with the bankruptcy petition.  The form states that $3,000 was received from Mr. Daniels and Mrs. Hughes.  Although Mr. Daniels and Mrs. Hughes could not provide evidence[2] of the total amounts paid to Mr. Batchelor over the course of their case, Mrs. Hughes testified that it was in excess of $5,000.

Additional monies were paid by Mr. Daniels and Mrs. Hughes upon the amendment of the Statement of Intent, Schedule B and Schedule D, the chapter 13 plan, and a motion to sell property.  Mr. Batchelor received $365 to prepare the amendments to the Statement of Intent, Schedule B and Schedule D; $125 to prepare the first amendment to their chapter 13 plan; $175 to prepare the second amendment to their chapter 13 plan; and, $250 to prepare the motion to sell property.  Mrs. Hughes provided further testimony regarding letters requesting additional fees.  The first letter was sent on April

---

[2] Mrs. Hughes testified that she contacted Mr. Batchelor's office and requested copies of the receipts showing the payments she and her husband made to Mr. Batchelor.  Her request was denied.

3

15, 2009.  The letter addressed the failure to timely file a certificate of credit counseling, as well as a show cause hearing set by the court.  Specifically, the letter stated that Mr. Daniels and Mrs. Hughes were required to pay Mr. Batchelor $500 to attend court on their behalf.  The letter plainly stated that Mr. Batchelor would withdraw as counsel if the fee was not paid.  Mr. Daniels and Mrs. Hughes did not pay Mr. Batchelor $500 because they completed and filed their certificate of credit counseling prior to the show cause hearing.  A second letter sent by Mr. Batchelor on June 11, 2009, was also discussed.  The second letter addressed a motion to dismiss filed by the chapter 13 trustee. Mr. Batchelor, within the letter, requested $200 to handle the trustee's motion to dismiss.  It again stated that if the fee was not paid, counsel would withdraw.

Mr. Daniels and Mrs. Hughes also provided testimony relating to Mr. Batchelor's professional conduct.  While discussing amendments to the chapter 13 plan, Mr. Batchelor informed the debtors that in order to have work completed correctly they would have to "learn to kiss his secretary's [expletive]."  Despite of all the monies paid to Mr. Batchelor to make necessary amendments to their schedules and plan, Mr. Daniels' and Mrs. Hughes' case was dismissed on September 25, 2009.  Mr. Batchelor did not file any additional fee disclosures with the court.

The third case before the court is Thomas Edward Beaman.  Mr. Beaman sought bankruptcy relief due to a failed construction business, as well as judgments against him personally.  Mr. Beaman testified that he paid Mr. Batchelor between $1,200 and $1,500 to represent him throughout his bankruptcy case.  Mr. Beaman's bankruptcy petition was filed on October 30, 2009. On November 10, 2009, the court entered an order for Mr. Beaman to appear and show cause for failure to file his certificate of credit counseling. Mr. Beaman stated that he completed the on-line credit counseling course and mailed the information to Hummingbird Credit Counseling and Education, Inc. ("Hummingbird"). However, due to a mailing error, Hummingbird did not receive Mr. Beaman's documents. Therefore, Mr. Beaman did not have a certificate to file with the court.  After multiple telephone calls and a second mailing, Hummingbird finally received Mr. Beaman's paperwork.  On November 13, 2009, Mr. Batchelor mailed a letter to Mr. Beaman instructing that it would cost $250 to have representation at the show cause hearing.  On

4

December 7, 2009, Mr. Batchelor sent a second letter explaining that if $250 was not received by his office, he would not represent Mr. Beaman at the upcoming hearing. Mr. Beaman did not pay Mr. Batchelor the $250 because he had the necessary paperwork to provide to the court. On December 16, 2009, the court held the show cause hearing with the chapter 13 trustee and Mr. Beaman in attendance. Mr. Batchelor was not at the hearing. Mr. Beaman's certificate of credit counseling was filed the same day as his show cause hearing. On January 19, 2010, Mr. Beaman's case was dismissed for failure to make plan payments.

      The fourth case before the court is Richard Eugene Haywood. Mr. Haywood filed for bankruptcy because his electrical business was failing. Mr. Haywood sought the services of Mr. Batchelor, who informed him the attorney fee would be $1,000. Mr. Haywood's case was filed on September 9, 2009. On October 26, 2009, the chapter 13 trustee filed a motion to dismiss for failure to make plan payments. On November 6, 2009, Mr. Batchelor filed a response to the trustee's motion requesting a hearing on the matter. It was Mr. Haywood's assumption that Mr. Batchelor would be present at the motion to dismiss hearing. Mr. Haywood further testified that he and Mr. Batchelor discussed converting his chapter 13 to chapter 7; however, no further action was taken towards conversion. On December 16, 2009, the court conducted a hearing on the trustee's motion to dismiss. Neither the debtor nor Mr. Batchelor were present at said hearing. The court entered an order dismissing the debtor's case.

      The fifth case is Don and Nancy Bosco. Mr. and Mrs. Bosco were not a party to the Bankruptcy Administrator's Motion; however, they provided testimony at the show cause hearing. Mr. and Mrs. Bosco sought bankruptcy relief due to the negative effect of the economy on Mrs. Bosco's personally owned restaurant and Mr. Bosco's employment. They consulted with Mr. Batchelor and decided to retain him as their bankruptcy attorney. Mr. and Mrs. Bosco were charged $3,000 to file their bankruptcy petition and an additional $1,000 for the petition to be accelerated. Mrs. Bosco asserted that she was informed the $4,000 would cover all attorney fees. Mr. and Mrs. Bosco's bankruptcy case was filed on April 1, 2009.

Mr. and Mrs. Bosco paid additional funds to Mr. Batchelor during each office visit. Mrs. Bosco testified that she and her husband paid Mr. Batchelor approximately $4,400 in total ($4,000 initially and $400 for additional meetings). On July 8, 2009, Mr. and Mrs. Bosco filed a motion to remove attorney and disgorge attorney fees. After a hearing, the court entered an order on August 25, 2009, allowing the removal of Mr. Batchelor as attorney and the disgorgement of fees in the amount of $1,125. The Boscos assert that Mr. Batchelor failed to represented their interests properly. Rather, the Boscos contend that they were taken advantage of. On one occasion in particular, Mr. Batchelor told the Boscos they, "were nag, nag nagging him [and that] he doesn't need any of this [expletive]." The court entered an order dismissing the Bosco's case on September 23, 2009, for failure to make plan payments.

The Bankruptcy Administrator also entered into evidence a reprimand issued against Mr. Batchelor by the North Carolina State Bar on August 6, 2007. The reprimand discusses fees that Mr. Batchelor charged in a case filed in Wake County. In that case, Mr. Batchelor quoted his client a flat fee of $1,250. As the case progressed, however, Mr. Batchelor charged his client an additional $4,450 to continue representation. Due to the clients inability to acquiesce to the request for additional fees, Mr. Batchelor withdrew as counsel. The reprimand highlights Rule 1.5 of the Rules of Professional Conduct. Rule 1.5 states that once a fee agreement is reached between an attorney and a client, the attorney has an ethical obligation to fulfill the contract regardless of whether an unfavorable bargain was struck. Furthermore, if an attorney renegotiates the fee agreement, the attorney may not abandon or threaten to abandon the client to coerce additional or higher fees.

## ANALYSIS

The evidence of record is clear that numerous violations of the Bankruptcy Code and the local rules of this court were committed. First and foremost, there appears to be a flagrant disregard of compensation and disclosure requirements. Pursuant to 11 U.S.C. § 329, an attorney must file with the court a statement of the compensation agreed to be paid. Section 330(a)(4)(B) authorizes the court in a chapter 13 case to "allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in

6

connection with the bankruptcy case . . . ." In furtherance of these Code sections, the local rules of this court have elaborately laid out the means by which a professional may charge fees. E.D.N.C. LBR 2016-1. The standard base fee in a chapter 13 case is $3,000.00. E.D.N.C. LBR 2016-1(a)(1). As proscribed by the local rules, the standard base fee is intended to cover all services that are reasonable and necessary for proper administration of a case in the first year. While additional fees, known as non-base fees, may be required for services outside of that which is considered "standard," such compensation must be applied for, noticed to the parties, and awarded by the court. E.D.N.C. LBR 2016-1(a)(4)-(5). Even when a non-base fee is presumptively reasonable, it must be applied for and noticed to the debtors, trustee, and bankruptcy administrator before automatic court approval is granted. E.D.N.C. LBR 2016-1(a)(6). Each attorney who undertakes the representation of a debtor in a chapter 13 case is charged with the responsibility of disclosing to the debtor these procedures of awarding fees. E.D.N.C. LBR 2016-1(a)(7).

From the testimony of the former clients, it is evident that Mr. Batchelor routinely acted in contravention of one or more of the subsections under Local Rule 2016-1. Often, full disclosure was not made to clients regarding billing practices and procedures. In fact, the court finds that the proscribed billing structure of this court was generally ignored. Clients sought the services of Mr. Batchelor believing they would be charged the standard base fee, only to discover that additional monies were required before services were rendered. Disclosure statements filed with the court do not reflect these additional amounts, nor does it appear that the appropriate applications were filed to seek such compensation. Instead, Mr. Batchelor imposed his own renegade billing structure, which is entirely impermissible.

Moreover, based upon the testimony at the hearing, problems also exist with the lack of professionalism Mr. Batchelor exhibits. Such problems include the clients inability to access their attorney, the level and quality of advice being offered, inappropriate delegation of work to staff members, and an overall lack of professional demeanor. These actions and inactions are suspect, and cut across multiple rules of professional conduct. However, the serious problems posed by Mr. Batchelor's behavior

7

can generally be labeled as a failure to "strive to attain the highest level of skill, to improve the law and the legal profession, and to exemplify the legal profession's ideals of public service." N.C. Rules of Prof'l Conduct R. 0.1[10] (2006).  The court finds that based on the incidents described, Mr. Batchelor has repeatedly acted in a manner that is unbecoming of a lawyer.  In doing so, he has failed to improve the legal profession or exemplify this profession's mores.

This court holds itself to the highest of standards.  The members of the bar that appear before this court are generally exemplary.  When one member of the bar acts in a way that tarnishes the established reputation of excellence, the court cannot sit idly by. Those problems illuminated by the motion to show cause and motion for examination under Bankruptcy Rule 2017 must be remedied.

## CONCLUSION

Based on the foregoing, the following shall be required of Mr. Batchelor: 1) Within 10 days of the hearing, all fees charged to the five clients who testified before the court shall be disgorged. 2) In the meantime, the court will provide Mr. Batchelor and the Bankruptcy Administrator with a list of all pending chapter 13 cases (the "open case list") where Mr. Batchelor is the counselor of record.  3) Within 20 days of receipt, Mr. Batchelor shall supply the Bankruptcy Administrator with an accounting of all fees paid to his office from each of those clients whose names appear on the open case list.  4) The Bankruptcy Administrator shall then have 20 days to review the court's records to insure that Mr. Batchelor's accounting and the records of disclosure match.  If the Bankruptcy Administrator finds that further egregious billing practices have occurred, she in her discretion may seek additional disgorgement.  5) Lastly, Mr. Batchelor is barred from filing any new petition in this court until April 15, 2010.

## END OF DOCUMENT